

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0354-12

---

**THE STATE OF TEXAS**

**v.**

**CARL ALAN BENNETT, Appellee**

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

---

KELLER, P.J., filed a concurring opinion in which PRICE, J., joined as to part I.

I agree with the Court that, because the law was unsettled, counsel was not ineffective for failing to raise a limitation claim. I write separately to explain why the applicable period of limitation for the aggravated assault charged in this case was two years.

### I. LIMITATIONS

### A. The Statutes

The difficulty in determining the statute of limitations in this case results from the fact that each of the two possibly applicable limitation statutes (Article 12.01 and Article 12.03) excepts from

its scope any offenses controlled by the other statute. Article 12.01 says , "Except as provided in Article 12.03, felony indictments may be presented within these limits, and not afterward."[1] It then provides a list of felony offenses and their applicable limitation periods.[2] Aggravated assault appears nowhere on the list,[3] but the list contains a catch-all provision that says "three years from the date of the commission of the offense: all other felonies."[4] Unless excepted under Article 12.03, then, aggravated assault would clearly fall within the catch-all provision and have a limitation period of three years.

Article 12.03 says, "Except as otherwise provided by this chapter, any offense that bears the title 'aggravated' shall carry the same limitation period as the primary crime."[5] The primary crime for aggravated assault is assault.[6] Although assault can sometimes be a felony,[7] the underlying assault in this case is a Class A misdemeanor.[8] Under Article 12.02, the limitation period for a Class A misdemeanor is two years.[9] If aggravated assault has the same limitation period as the underlying assault, then the limitation period is two years, unless some other provision in Chapter

---

[1] TEX. CODE CRIM. PROC. art. 12.01.

[2] *Id.*

[3] *Id.*, *passim*.

[4] *Id.* art. 12.01(7).

[5] *Id.* art. 12.03(d).

[6] *See* TEX. PENAL CODE § 22.02(a) ("A person commits an offense if the person commits assault as defined in § 22.01 and . . . .")

[7] *See id.* § 22.01(b), (b-1).

[8] *See id.* § 22.01(a)(1), (b).

[9] TEX. CODE CRIM. PROC. art. 12.02(a).

12 creates an exception.

To summarize, if the "catch-all" provision in Article 12.01 controls, then the limitation period is three years, but if the "same for aggravated as for primary crime" provision in Article 12.03 controls, then the limitation period is two years. Which provision controls depends in part upon how each of the "except" clauses operates. Although resolving this issue appears at first to be a complicated matter, it really is not. As I shall show below, both the legislative history of Article 12.03(d) and simple logic lead to the conclusion that the limitation period in this case is two years.

### B. The Cases - *Dicta* Goes Both Ways

In the 1979 case of *Hunter v. State*, the defendant claimed that the indictment was defective because it alleged in the disjunctive that he intentionally or knowingly committed the offense rather than alleging it in the conjunctive.[10] In what was clearly an aside, the Court said that the use of the disjunctive word "or" was far less misleading than an "on or about" allegation, but that "on or about" allegations were routinely upheld.[11] During that off-topic discussion, the Court mentioned that the statute of limitations for the offense of aggravated assault was "a period of three years."[12] The Court gave no citation for that proposition.[13] This discussion, which was clearly *dictum* and unsupported by any authority, has no precedential value.

Eight years later, in *Salas v. State*, the issue before the Court was whether there was any evidence that the defendant's first prior felony conviction became final before the commission of the

---

[10] 576 S.W.2d 395, 396 (Tex. Crim. App. 1979).

[11] *Id.*

[12] *Id.* at 399.

[13] *Id.*

offense in the second prior felony conviction, so as to satisfy the habitual-offender allegation in the indictment.[14] The first prior conviction was final on January 15, 1971.[15] The defendant was indicted on May 6, 1975, for the aggravated assault that resulted in his second felony conviction.[16] The Court used a three-year limitation period to determine that the earliest possible date the second crime could have been committed was May 6, 1972, making the defendant subject to the habitual-offender provision.[17] In connection with the limitations discussion, the Court simply said, "The statute of limitations for aggravated assault has long been three years."[18] In support of this proposition, the Court cited the catch-all provision in Article 12.01, Article 12.03(d), the assault statute (Penal Code § 22.01), and former Penal Code Article 1147, the aggravated assault statute that existed before 1974.[19]

The discussion of limitation periods in *Salas* is problematic on a number of levels. It did not matter whether the limitation period for aggravated assault was two or three years: a limitation period of two years would also have satisfied the habitual-offender allegations.[20] But more to the point,

---

[14] 724 S.W.2d 67, 67 (Tex. Crim. App. 1987).

[15] *Id.* at 68.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] Nor did the Court need to count back three years. The indictment specified an offense date of April 27, 1975, *see id.*, and aggravated assault was not a felony until January 1, 1974, with the advent of the modern Penal Code. *See* TEX. PENAL CODE, art. 1148 (Vernon's Supp. 1950) (maximum punishment of two years in jail); TEX. PENAL CODE, art. 47 (Vernon's 1948) ("An offense which may—not must—be punishable by death or by confinement in the penitentiary is a felony; every other offense is a misdemeanor.").

although the *Salas* court cited the relevant statutes, it did not explain how they gave rise to its conclusion that the limitation period was three years.[21] So, the discussion in *Salas* was also *dictum* and has no precedential value.

Next came *Ex parte Matthews*, in which the issue was whether the statute of limitations was tolled by the defendant's absence from the State.[22] The defendant had previously testified as an out-of-state witness in a capital murder trial on June 12, 1981, and she left the state after she testified.[23] Around February or March of 1990, the State discovered facts that led to the defendant being indicted on January 8, 1991, for aggravated perjury.[24] The State sought to rely upon a tolling provision that provided that "[t]he time during which a person is accused of an offense and is absent from the State shall not be computed in the period of limitation."[25] This Court held that the tolling provision operated only when the State had some sort of formal accusation pending, so the limitation period was not tolled.[26]

During this discussion, the Court stated that the period of limitations for aggravated perjury was two years because an offense titled "aggravated" carries the same limitation as the primary crime under Article 12.03(d).[27] The Court did not discuss the catch-all provision in Article 12.01 or the

---

[21] *Salas*, *passim*.

[22] 933 S.W.2d 134, 135 (Tex. Crim. App. 1996), *overruled on other grounds by Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998).

[23] *Id.*

[24] *Id.*

[25] *Id.* at 137.

[26] *Id.* at 138.

[27] *Id.* at 136.

pronouncements made in *Hunter* and *Salas* in connection with the offense of aggravated assault.[28] In any event, the conclusion that the limitation period was two years was not necessary to the Court's holding. Because the State did not discover the perjury for more than eight years, it mattered not whether the limitation period was two years or three years. Thus, the discussion of the applicable limitation period in *Matthews* was also *dictum* and has no precedential value.

Because all of our prior caselaw is *dicta*, we are essentially operating on a clean slate.

### C. Before 1997

We must construe a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended.[29] In conducting this inquiry, we presume that the legislature intended the entire statutory scheme to be effective.[30] Most of the relevant statutory scheme was in place before 1997, but the "[e]xcept as otherwise provided" clause found in Article 12.03(d) was the result of a 1997 amendment.[31] It is useful to set aside, for the moment, the 1997 amendment and assess the meaning of the statutory language that was in place prior to 1997. I will then look at whether the 1997 amendment changes anything.

As noted above, article 12.01 begins by saying that it prescribes the time limits "[e]xcept as provided in Article 12.03." This language suggests that the provisions of Article 12.03 trump any provisions found in Article 12.01. The point at which the provisions of Article 12.01 and 12.03

---

[28] *Id., passim.*

[29] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[30] *Bays v. State*, 396 S.W.3d 580, 584 (Tex. Crim. App. 2013).

[31] *See* Acts 1997, 75th Leg., ch. 740, § 2.

appear to be in conflict is with respect to Article 12.01's three-year catch-all provision. The import

of this language, then, is that the catch-all provision applies to unlisted felonies unless the felony is

covered by the provisions of Article 12.03. Because aggravated assault is an "aggravated" offense,

the plain language of the statute, at least prior to 1997, seems to dictate that Article 12.03(d) applies

rather than the three-year catch-all provision.

It might be argued that the "[e]xcept as provided in Article 12.03" phrase means that the

provisions of Article 12.03 could *lengthen* the limitation period beyond the period in the catch-all

provision but not *shorten* it. That is, Article 12.03 could, arguably, be construed as permitting

periods of limitation of longer than three years but not shorter, so that the catch-all provision would

provide a minimum limitation period of three years for felonies.[32] That would be consistent with the

fact that the catch-all provision currently prescribes the shortest limitation period in Article 12.01.

This may be what the *Salas* court assumed when it cited both to the catch-all provision and to article

12.03(d).

But even if the language of Article 12.01 could conceivably be read that way, it is not the

most natural reading. And such a reading is inconsistent with the apparently absolute language (at

least before 1997) of Article 12.03. Article 12.03(d) simply said that an aggravated offense carries

the same limitation period as the primary crime; it did not (and does not) say that it carries *at least*

the same limitation period.

Moreover, reading the "except as provided in Article 12.03" phrase to only lengthen

limitation periods makes sense only if the three-year catch-all provision is thought to set a minimum

---

[32] Judge Cochran's concurrence does in fact assume that the intent of the Legislature in enacting Article 12.01(7) was that "all felonies have, at a minimum, a three-year statute of limitations[.]"

limitation period of three years for felonies. But when Chapter 12 was reshaped in 1973 in what is now the current limitations framework, Article 12.01 included in its list of limitation periods for specific offenses a one-year limitation period for felony sex offenses.[33] Though that provision was removed two years later,[34] its presence negates the idea that the legislature thought it was setting a minimum three-year limitation period for felonies.

Finally, the idea that Article 12.03 could only lengthen the period of limitation runs aground when one considers what offenses were actually covered by Article 12.03(d). The reshaping of Chapter 12 and the enactment of the 1974 Penal Code occurred at the same time in the same legislation.[35] When that occurs, we generally assume that lawmakers are aware of how the various provisions will work together.[36] In enacting the 1974 Penal Code, the legislature created at least five, and possibly six, pairs of primary and aggravated offenses: (1) kidnapping and aggravated kidnapping,[37] (2) rape and aggravated rape,[38] (3) assault and aggravated assault,[39] (4) robbery and

---

[33] *See* TEX. CODE CRIM. PROC. ANN. art. 12.01, historical note (Vernon's 1977) (referring to 1975 amendment).

[34] *See id.* (text and historical note).

[35] *See* Acts 1973, 63rd Leg., ch. 399, § 1 (penal code), § 2(B) (Chapter 12), eff. January 1, 1974.

[36] *Tapps v. State*, 294 S.W.3d 175, 179 (Tex. Crim. App. 2009).

[37] TEX. PENAL CODE ANN. §§ 20.03, 20.04 (Vernon's 1974).

[38] *Id.* §§ 21.02, 21.03.

[39] *Id.* §§ 22.01, 22.02.

aggravated robbery,[40] (5) perjury and aggravated perjury,[41] and (possibly) (6) promotion of prostitution and aggravated promotion of prostitution.[42]

If Article 12.03(d) were designed only to *lengthen* limitation periods beyond that prescribed by the catch-all provision, then one would expect such an effect to be the norm with respect to the aggravated offenses that the legislature had enacted. But of the six aggravated offenses identified, only one is an example in which 12.03(d) lengthens the limitation period: aggravated robbery. Robbery was (and still is) subject to a five-year limitation period,[43] but aggravated robbery was not (and still is not) found in the list of offenses contained in Article 12.01. So Article 12.03(d) ensured that aggravated robbery would carry the five-year limitation period that attaches to robbery instead of the three-year limitation period found in the catch-all provision.

But at the time the scheme was first enacted, none of the other aggravated offenses could be affected that way. Kidnapping and aggravated kidnapping were both felonies[44] that were not included in the list when Article 12.01 was revamped in 1973,[45] and thus, they were *both* subject to the three-year catch-all provision. Rape and aggravated rape were explicitly made subject to a one-

---

[40] *Id.* §§ 29.02, 29.03.

[41] *Id.* §§ 37.02, 37.03.

[42] *Id.* §§ 43.03, 43.04. Though titled "aggravated" in conformity with the requirements of Article 12.03(d), the aggravated promotion of prostitution does not explicitly incorporate the crime of promotion of prostitution by its Penal Code section. I express no opinion on whether this offense pair falls within the ambit of Article 12.03(d).

[43] *See* TEX. CODE CRIM. PROC. art. 12.01(3)(A) (Vernon's 1977). *See also* TEX. CODE CRIM. PROC. art. 12.01(4)(A) (current).

[44] *See* TEX. PENAL CODE §§ 20.03(c), 20.04(b) (Vernon's 1974).

[45] *See* TEX. CODE CRIM. PROC. art. 12.01, *passim* (Vernon's 1977).

year limitation period.[46]  When this one-year limitation period was removed in 1975, the legislature

did not replace it with anything, effectively relegating both of those felony offenses,[47] as in the case

of the kidnapping offenses, to the three-year catch-all provision.

The remaining three aggravated offenses—aggravated assault, aggravated perjury, and

aggravated promotion of prostitution—all straddled the misdemeanor-felony divide with their lesser

counterparts.  When first enacted in 1973, assault was just a misdemeanor.[48]  Aggravated assault was

a third-degree felony at the time.[49]  Perjury was a Class A misdemeanor while aggravated perjury

was a third-degree felony,[50] and the same was true, respectively, for promotion of prostitution and

aggravated promotion of prostitution.[51]

If we construe the statutory limitation scheme to assign aggravated versions of these offenses

the two-year limitation period that attaches to their misdemeanor counterparts, then Article 12.03(d)

operates with meaningful effect with respect to at least half of the five or six aggravated offenses at

issue (i.e. meaningful effect given in the context of aggravated robbery, aggravated assault,

aggravated perjury, and (possibly) aggravated promotion of prostitution).  By contrast, if we construe

the statutory limitation scheme to assign the aggravated versions of these offenses the three-year

---

[46]  *See id.*, historical note (referring to deleted subd. (4), which had read: "one year from the date of the commission of the offense: any felony in Penal Code Chapter 21 (Sexual Offenses)").

[47]  *See* TEX PENAL CODE §§ 21.02(c), 21.03(b) (Vernon's 1974).

[48]  *Id.* § 22.01(b).

[49]  *Id.* § 22.02(c).

[50]  *Id.* §§ 37.02(b), 37.03(b).

[51]  *Id.* §§ 43.03(b), 43.04(b).

limitation period found in the catch-all provision, then we relegate the meaningful effect of 12.03(d) to only one aggravated offense out of the five or six at issue (i.e. meaningful effect given only in the context of aggravated robbery). Given the relatively large proportion of aggravated offenses that straddled the misdemeanor-felony divide with their lesser counterparts, the latter construction makes little sense.

### D. After 1997

In 1997, with HB 921, the legislature added aggravated sexual assault of a child to the listed offenses found in Article 12.01, as follows:

(5) ten years from the 18th birthday of the victim of the offense:

* * *

(C) aggravated sexual assault under Section 22.021(a)(1)(B), Penal Code;[52]

With the same bill, the legislature added to Article 12.03(d) the phrase "Except as otherwise provided by this chapter."[53] The bill analysis for HB 921 explains the purpose of this change as follows, "Amends Article 12.03(d), Code of Criminal Procedure, by making a conforming change."[54] The conforming change was necessary because limitations for sexual assault was, at the time, five years.[55] Absent the "except" phrase, the new, explicit ten-year limitation period in Article 12.01(5)(C) would conflict with Article 12.03(d)'s old "same for aggravated as for primary crime"

---

[52] Acts 1997, 75th Leg., ch. 740, § 1.

[53] Id., § 2.

[54] Bill Analysis, House Comm. on Criminal Jurisprudence, H.B. 921, § 2 (April 9, 1997), *See also* Bill Analysis, Senate Research Center, H.B. 921, § 2 (May 17, 1997).

[55] TEX. CODE CRIM. PROC. art. 12.01(4)(C) (West 1996, 1998).

provision. The express purpose of adding the "except" phrase to Article 12.03(d) was to give effect to the explicit ten-years-from-eighteenth-birthday limitation period for aggravated sexual assault of a child in Article 12.01.

Since then, the Legislature has added a second aggravated offense to the listed offenses in Article 12.01: aggravated kidnapping with the intent to violate or abuse the victim sexually. The current version of Article 12.01 therefore explicitly lists the limitation status of two "aggravated" offenses.[56] Because the status of these two "aggravated" offenses are explicitly listed in Article 12.01, they are excepted from the operation of Article 12.03(d).

But aggravated assault is not explicitly listed in Article 12.01. The only way aggravated assault could fall within the exception to Article 12.03(d) and by that means escape the "same for aggravated as for primary crime" provision is if it were included in the catch-all provision for unlisted felonies. That is, the "same for aggravated as for primary crime" provision would apply unless the three-year catch-all phrase, by virtue of being another provision in the chapter, trumps it. But, as explained above, the legislature's express purpose in adding the "except" clause to Article 12.03(d) was to resolve the conflict between the new ten-year-from-18th-birthday limitation provisions that had been added to Article 12.01 in the same bill and the old "same for aggravated as for primary crime" limitation provision. Article 12.03(d)'s "except" clause was designed specifically to apply to *listed* offenses.

It is, further, plainly illogical to conclude that the exception applies to the offenses that fall within the three-year catch-all provision. Construing the three-year catch-all provision to supersede

---

[56] *See* TEX. CODE CRIM. PROC. art. 12.01(1)(B) (no limitation), (5)(B) (20 years from the 18th birthday of a victim younger than 17 years).

Article 12.03(d)'s "same for aggravated as for primary crime" provision would eviscerate the latter provision entirely because it would make any aggravated offense—whether listed or not listed—an exception to its dictates. Not a single aggravated offense would be subject to the "same for aggravated as for primary crime" provision. Not a one. Article 12.03(d) would have zero application.

And if the three-year catch-all provision trumps the "same for aggravated as for primary crime" provision, the limitation period for aggravated robbery would be three years even though limitations for plain robbery is five years. It seems unlikely (to say the least) that the legislature would have intended the limitation period for robbery to be longer than that for aggravated robbery. If anything, the exception added to Article 12.03(d) reinforces the notion that the legislature intended for aggravated assault to have the same limitation period as assault because, while the legislature has explicitly set out exceptions involving aggravated sexual assault and aggravated kidnapping, it has not done so for aggravated assault.

The conclusion demanded by both legislative history and logic is that Article 12.03(d) controls, and the limitation period for the aggravated-assault offense in this case was two years.[57]

### E. Judge Johnson and Judge Cochran's Concurrences

Judge Johnson's concurrence contends that it would be an absurd result to construe the limitation period for aggravated assault as being the same as for a misdemeanor, i.e. two years. While Judge Johnson is correct that sexual assault and kidnapping *currently* have limitation terms

---

[57] This does not mean that the limitation period for aggravated assault will *always* be two years. If the underlying assault is a felony, that offense would fall within the three-year catch-all provision, and 12.03(d) would confer the same limitation period to an aggravated assault based on that underlying felony.

that exceed the three-year catch-all provision, that was not true when Article 12.03(d) was enacted. As explained above, when 12.03(d) was enacted in 1974, all sex offenses had a limitation period of one year (which is *less* than the two-year period for misdemeanors), and the offense of kidnapping was not even listed in Article 12.01, which meant that both kidnapping and aggravated kidnapping fell within the three-year catch-all provision, with or without Article 12.03(d).[58]

I agree with Judge Johnson that we can look at surrounding statutory provisions in assessing whether the plain language of a statutory provision under consideration is absurd. But in conducting that inquiry—in determining whether the legislature could not have possibly intended what the statutory language seems to say—we should look to the surrounding provisions that were in effect or were enacted at the time the legislature enacted the statute under consideration, not at provisions that were passed years or even decades later.[59] The biggest difficulty with Judge Johnson's concurrence, as I see it, is that it attempts to ascertain the legislature's intent in 1974 by looking at statutes that were passed long after that time, while failing to consider the statutory framework that was actually in place in 1974.

Judge Johnson's concurrence next contends that the legislature surely could not have intended to impose the same limitation period for a violent offense such as aggravated assault as for a misdemeanor assault that merely involves an offensive or provocative touching. But some misdemeanor assaults—causing bodily injury and threatening imminent bodily injury—do qualify

---

[58] *See* this opinion at notes 33, 44-46, and accompanying text.

[59] *See Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007) ("in interpreting a prior law, we generally accord little weight to subsequent legislative enactments").

as violent offenses.[60]

Moreover, Judge Johnson's concurring opinion does not take into account the fact that aggravated assault *was a misdemeanor* before 1974.[61]  When the legislature passed Article 12.03(d) in 1974 it also made aggravated assault a third degree felony,[62] the lowest possible felony at the time, just one level above a Class A misdemeanor.[63]  Times have changed: aggravated assault is now a first or second degree felony[64] and there is now a class of felonies below third degree.[65]  But the absurd-results inquiry turns on what the legislature could have possibly intended in 1974, when the statute was enacted, not what it could have intended if it had enacted the statute today.  We should keep in mind that the 1974 legislature is the same legislature that placed a one-year limitation period on all sexual offenses—something that would be unthinkable today.

Further, Judge Johnson's expression of incredulity just amounts to saying that it seems unlikely that the legislature intended a two-year limitation period for aggravated assault.  If one looks at the statute from the perspective of the *1974* legislature, intending a two-year limitation period does not seem at all unlikely, but even if it did, that is not the same as saying that the legislature could not have possibly intended it.

Judge Cochran contends that several pre-1974 offenses were precursors to the modern

---

[60]  *See* TEX. PENAL CODE § 22.01(a)(1), (2).

[61]  *See* this opinion at note 20 and accompanying text.

[62]  *See* this opinion at note 49 and accompanying text.

[63]  *See* TEX PENAL CODE §§ 12.03(a), 12.04(a) (Vernon's 1974).

[64]  *See* TEX PENAL CODE § 22.02(b) (current).

[65]  *See Id.* § 12.04(a).

aggravated-assault offense, and that, included among these precursor offenses were felony offenses that proscribed "assault with intent" to commit some other offense, such as murder, rape, robbery, and burglary.[66] In my view, these "assault with intent" offenses were not precursors to the modern aggravated-assault offense but were instead precursors to the modern attempt offenses.[67] Before 1974, there was no general attempt statute.[68] Attempt offenses were codified on an *ad hoc* basis. There was an "attempt" offense for burglary,[69] but no attempt offense existed for murder or robbery.[70] An "attempt" offense existed for rape, but only to the extent it was not already covered by the offense of assault with intent to commit rape.[71] The promulgation of "assault with intent" offenses was one of the ways in which the legislature proscribed uncompleted versions of major crimes. These offenses were grouped together in their own chapter of the Penal Code, separate from the chapter in which aggravated assault was proscribed.[72]

Judge Cochran's concurrence observes that changing the name of the offense of "aggravated

---

[66]*See* TEX. PENAL CODE, , arts. 1160-1164 (1948).

[67]The offenses of maiming, disfiguring, and castration describe conduct that would fall within the modern aggravated assault offense, but those offenses are worded very differently from the modern aggravated assault offense. *See id.*, arts. 1166-1168. By contrast, the pre-1974 offense titled aggravated assault contains provisions that are similar to the modern offense with that name. *See* TEX. PENAL CODE, , art. 1147(6), (7) (Supp. 1972).

[68]*See* TEX. PENAL CODE, *passim* (1948).

[69]*Id.*, art. 1402.

[70]*See id.*, Title 15, Ch. 16, arts. 1256-1258 and Title 17, Ch. 7, arts. 1408-1409.

[71]*Id.*, art. 1190 ("but not such as to bring it within the definition of assault with intent to commit rape").

[72]*See id.*, Title 15, Ch. 2 (titled "Aggravated Assault and other offenses") and Title 15, Ch. 4 (titled "Assault with intent to commit some other offenses").

assault" to "felony assault" would make clear that the offense is not governed by Article 12.03 and has a different limitation period than the unaggravated version of assault. But Judge Cochran's discussion shows an example of the legislature doing precisely the opposite. As Judge Cochran observes, the pre-1974 offense of assault with intent to commit rape was construed by this Court to have a longer limitation period than the offense of rape, despite the fact that assault with intent to commit rape was essentially an uncompleted rape. The 1974 Penal Code changed that by essentially merging what was the offense of assault with intent to commit rape into the offense of attempted rape. The result was that the limitation period for both offenses became the same, which at the time was one year.

As Judge Cochran points out, the legislature could have exempted the offense of aggravated assault from Article 12.03 by giving it a different name. Or it could have assigned aggravated assault an express limitation period in Article 12.01, just as it has done for other offenses. The legislature has done neither of these things. As it is, the language of the current statutory scheme affords no logical basis for excluding aggravated assault from the "same for aggravated as for primary crime" mandate of Article 12.03(d), and doing so renders that statute meaningless.

## II. CONCLUSION

Although I conclude that the limitations period for the aggravated assault offense in this case was two years, I agree with the Court that the law was unsettled. Consequently, I join the Court's opinion.

Filed: November 27, 2013
Publish